See also 22 F.R.D. 306.

**COMMONWEALTH OIL REFINING COMPANY, Inc., Plaintiff,**

v.

**HOUDRY PROCESS CORPORATION, Defendant.**

**Civ. No. C 161–58.**

United States District Court
D. Puerto Rico,
San Juan Division.

Aug. 4, 1960.

Fiddler, Gonzalez, Guillemard & Rodriguez, San Juan, P. R., for plaintiff.

Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

RUIZ-NAZARIO, District Judge.

The complaint in this action was filed May 19, 1958, alleging breach of warranty and negligence and praying for damages in excess of $2,000,000.

Service of the summons and complaint was made on one William Lloyd Paxton, an employee of defendant then at plaintiff's refinery near Ponce, Puerto Rico. Plaintiff also served the Secretary of State of Puerto Rico.

On June 6, 1958, defendant filed a "Motion to Dismiss" the complaint, or, in the alternative, to quash the return of the summons, on the grounds that defendant was a Delaware corporation and not subject to the service of process within the district of Puerto Rico, and that defendant has not been properly served in this action. The motion was amended on April 20, 1959, and February 2, 1960. Several affidavits have been filed in support of the motion.

After defendant filed its motion, plaintiff commenced discovery by way of interrogatories, depositions and requests for production of documents, which, by order of this Court were limited to the facts relating to the jurisdiction of this Court.

There have been filed herein by plaintiff in opposition to defendant's motion, affidavits, defendant's answers to plaintiff's interrogatories, the depositions of eleven officers and employees of defendant and one employee of The Lummus Company; and two Exhibit Books, consisting of copies of letters, internal memoranda, "log sheets", sketches and drawings, and other documents, taken almost entirely from the files of defendant. In addition to affidavits, defendant submitted exhibits and the deposition of one of plaintiff's employees.

Defendant's motion came before the court on oral argument on March 30, 1960, and was thoroughly argued and briefed by counsel for each party.

Since defendant is a Delaware corporation not qualified to do business in the Commonwealth of Puerto Rico, this Court must determine whether defendant was "doing business" in Puerto Rico so as to subject it to service of process in this action.

The question as to what corporate activities constitute "doing business" in jurisdictions other than the state of incorporation has been the subject of a long line of decisions in the State and Federal Courts and in the courts of the Commonwealth. Insofar as the "due process" requirements of the Federal Constitution, U.S.Const. Amend. 14 are concerned, the leading cases are International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and McGee v. International Life Insurance Company, 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. The standards set by International Shoe and followed in McGee are as follows:

> "* * * due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 316, 66 S.Ct. 158.

> "Since the corporate personality is a fiction * * * it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its be-

half by those who are authorized to act for it." Id.

" 'Presence' (in a state) has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." 326 U.S. 317, 66 S.Ct. 159.

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit; and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. St. Louis S. W. R. Co. [of Texas] v. Alexander, supra [227 U.S. 218], 228 [33 S.Ct. 245, 248, 57 L.Ed. 486]; International Harvester Co. [of America] v. [Commonwealth of] Kentucky, supra [234 U.S. 579], 587 [34 S.Ct. 944, 946, 58 L.Ed. 1479]. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure".

The Supreme Court of Puerto Rico, in Schwartz v. District Court, 73 P.R.R. 800 (1952) adopted the rules announced in International Shoe, referring to the decision as a "realistic concept."

Defendant's activities in Puerto Rico must, therefore, be viewed in the light of the principles announced in International Shoe.

In one of the affidavits filed by defendant in support of its motion, defendant's business is described as follows:

"Houdry is engaged in research and development pertaining to catalytic processes in the petro-chemical field; in patenting its inventions; in developing techniques and know-how for the commercial utilization of such inventions; in granting licenses to refiners and others to practice its processes; and in furnishing the necessary process, engineering, designs, plans, specifications, technical information and know-how for the utilization of its processes. In addition, Houdry manufactures and sells certain catalysts which it has developed. In the case of Kaolin catalysts, Houdry makes the sales, but the product is manufactured for Houdry by Minerals & Chemicals Corporation of America under a process developed by Houdry."

The mass of documents from defendant's files and the other evidence adduced herein by plaintiff shows that defendant carried out many of the described activities in Puerto Rico almost continuously from December 1955, when its agents first arrived in Puerto Rico, until May 1958, when this action was commenced.

In 1954 and in 1956, defendant contracted with Lummus to supply the design and start-up personnel for the "Houdriformer" and "Houdriflow" units at the plaintiff's refinery; also in 1954, defendant licensed to plaintiff the right to use these processes which were patented by defendant (such use being limited to Puerto Rico).

In the course of carrying out its obligations under its contracts with Lummus, defendant executed several contracts in Puerto Rico, including workmen's compensation insurance with the State Insurance Fund of Puerto Rico and several automobile rental contracts for the use of its employees.

Since December 1955, defendant had one or more employees in Puerto Rico; it appears that the largest number that were here at any one time was seven. A total of 20 employees of defendant made 64 different trips to Puerto Rico, including six trips, totalling 53 days in Puerto Rico, by one of defendant's Vice Presidents who was also Vice Chairman

of defendant's Board of Directors. From the information supplied by defendant, plaintiff has computed the total "man days" spent by all of defendant's employees in Puerto Rico at 10.2 years; plaintiff has also computed the approximate compensation paid by defendant to its employees while they were in Puerto Rico at $250,000, or about $100,000 per year.[1] Several of defendant's employees lived in rented apartments in Ponce.

The evidence further shows that defendant's employees in Puerto Rico prepared and delivered to plaintiff or Lummus design sketches and drawings, collected extensive know-how and transmitted it to defendant's home office in the form of voluminous reports and daily records of the operations of the units at plaintiff's refinery. On several occasions, defendant's agents had direct operating supervision of the "Houdriflow" and "Houdriformer" units at the refinery, and on some occasions defendant's agents actually operated the units. They carried on complete and detailed inspections of the units and supervised the making of changes in the units which they recommended.

From all of the evidence in this record, I have no doubt that defendant's activities in Puerto Rico throughout the period here involved far exceeded the "minimum contacts" which International Shoe indicated to be required for in personam jurisdiction. There can be no question that in the constitutional sense defendant was and is subject to the jurisdiction of this Court, by reason of its having been "doing business" in Puerto Rico since December 1955. Westcott-Alexander, Inc. v. Dailey, 4 Cir., 1959, 264 F.2d 853.

Defendant contends that it may not be "deemed to be doing business" in Puerto Rico because of the provisions of Section 1403 (14 L.P.R.A.Supp. § 2403) of the General Corporation Law of Puerto Rico.

The pertinent parts of that Section are as follows:

"§ 2403. Exceptions to requirements

"No corporation created by the laws of any foreign country or any jurisdiction or state of the United States, or the laws of the United States shall be deemed to be doing business in this Commonwealth, nor shall the corporation be required to comply with the provisions of sections 2401 and 2402 of this title under the following conditions, or any of them—

\* \* \* \* \*

"(2) If it employs salesmen, either resident or traveling, to solicit orders in this Commonwealth either by display of samples or otherwise (whether or not maintaining sales offices in this Commonwealth), all orders being subject to approval at the offices of the corporation without this Commonwealth, and all goods applicable to the orders being shipped in pursuance thereof from without this Commonwealth to the vendee or to the seller or his agent for delivery to the vendee, and if any samples kept within this Commonwealth are for display or advertising purposes only, and no sales, repairs or replacements are made from stock on hand in this Commonwealth;

"(3) If it sells, by contract consummated outside this Commonwealth, and agrees, by the contract, to deliver into from without this Commonwealth machinery, plants or equipment, the construction, erection or installation of which within this Commonwealth requires the supervision of technical engineers or skilled employees performing services not generally available, and as a part of the contract of sale agrees to furnish such services, and such

---

1. In International Shoe, the Court made specific reference to the fact that the defendant there had paid to its salesmen more than $31,000 per year commissions for sales made in the State of Washington. 326 U.S. 313, 66 S.Ct. 156.

services only, to the vendee at the time of construction, erection or installation."

Plaintiff asserts that this section does not grant any exemption from amenability to service of process, but merely provides an exemption from the qualification requirements of the Corporation Law. Plaintiff further asserts that in any event defendant's activities far exceeded the activities exempted by that section.

The Court is aware that a substantial part of Puerto Rico's Corporation Law was taken from the Corporation Law of Delaware, and that the above-quoted section was derived from Section 343 of Title 8 of the Delaware Code (Sec. 2247 of the 1935 Code).

The Delaware Supreme Court has indicated in *obiter dictum* that Section 343 of the Delaware Code extends to service of process as well as to qualification. Klein v. Sunbeam Corp., 1952, 8 Terry 526, 47 Del. 526, 94 A.2d 385. However, the excellent memorandum which accompanied the submission of the Corporation Law to the Legislature of Puerto Rico does not indicate any intent to adopt this construction, and refers only to qualification. A similar statutory exemption was limited to qualification in Radford v. Minnesota Mining & Mfg. Co., D.C.E.D.Tenn.1955, 128 F.Supp. 775, at page 778.

However, this Court is not required to decide this question. The evidence of defendant's activities in Puerto Rico demonstrates that whether or not the exemption of Section 2403 extends to service of process, the exemption is not available to defendant.

Section 2403(2) relates solely to salesmen who solicit orders in the Commonwealth subject to home office approval. At least five of defendant's top managerial and technical personnel took part in defendant's efforts to sell kaolin catalyst (the subject of this action) to plaintiff; admittedly, none of such persons were catalyst salesmen. Defendant's Vice President and Vice Chairman of its Board of Directors sought to sell

kaolin catalyst to plaintiff at a meeting of plaintiff's Executive Committee in Ponce; he admitted that any sale of catalyst made by him would "probably not" have required "any further authority." Sales efforts were also made in Puerto Rico by defendant's Manager of Catalyst Sales, who certainly would not have required home office approval to make a sale of catalyst. Thus, defendant's activities exceeded the scope of the exemption provided by this subsection.

Section 2403(3) relates solely to sales of machinery, plants or equipment by contract in which the seller agrees to furnish the services of technical engineers or skilled employees, "and such services only" for the installation of the plant or equipment sold. It is clear that defendant did not sell any "machinery, plants or equipment" to plaintiff or to anyone else in Puerto Rico. Defendant contracted with Lummus to supply design drawings and the services of its technical personnel. Moreover, even if defendant had sold plants or equipment to plaintiff or Lummus, defendant's start-up and training activities would have exceeded the statutory limits. This exemption is therefore not available to defendant.

Certain of the other activities of defendant in Puerto Rico were rendered in connection with defendant's license agreements with plaintiff which activities are in no way exempted by the Corporation Law.

Accordingly, I find that defendant was and is subject to the jurisdiction of this Court in this action. It remains only to determine whether defendant was properly served with the summons and complaint.

Plaintiff effected personal service upon Mr. Paxton at the plaintiff's refinery and also effected substituted service of the summons and complaint upon the Secretary of State of Puerto Rico. Defendant challenges the validity of the service in each instance.

Service was effected upon Mr. Paxton as the "general agent" or "managing agent" of defendant in Puerto Rico, pursuant to the 1943 Puerto Rico Rules of

Civil Procedure, Rule 4(d) (4) (Title 32 L.P.R.A.Appendix) which in this respect is the same as Rule 4(d) (3), Federal Rules of Civil Procedure, 28 U.S.C.A. Defendant denies that Mr. Paxton is its "general agent" or "managing agent."

In Schwartz v. District Court, supra, the Supreme Court of Puerto Rico dealt at length with the question of "general agent" and "managing agent," and stated (at pages 813–814 of 73 P.R.R.):

> "A general agent is different from a managing agent, and, as to the latter, the requirements are more stringent, but valid service may be made on either class of agent. Jacobowitz v. Thomson, supra, opinion delivered by Judge Clark. Swarts v. Christie Grain & Stock Co. [C.C.], 166 Fed. 338, 342, also establishes the difference between a managing and a general agent since the former controls, directs, or supervises a corporate business and the latter has a more generally representative status. A general agent is one authorized to conduct a series of transactions involving a continuity of service. Restatement of the Law of Agency, S 3(1). The power to exercise an independent judgment is a factor to be considered, but it is not essential if there is continuity of service. See Todd Shipyards Corporation v. The City of Athens [D. C.], 83 F.Supp. 67, 88, and Hackney v. Fairbanks, Morse & Co. [Mo. App.], 143 S.W.2d 457. The general agent is an agent having broad and general powers, Carver v. Preferred Accident Ins. Co. [218 Iowa 873], 256 N.W. 274, or authorized to transact all of his principal's business of some particular kind or at a particular place, and authorized to act on behalf of his principal in all matters included within the ordinary course or nature of his principal's business  *  *  *  (cases cited.) The agent's authority need not extend over the whole business of the principal (Hackney v. Fairbanks, Morse & Co., supra), nor need the agent be an officer of the corporation. Vardeman v. Penn Mut. Life Ins. Co. [125 Ga. 117], 54 S.E. 66."

Mr. Paxton's activities as the "Chief Field Operator" of defendant at plaintiff's refinery were continuous from the beginning of 1956 until March 1957, when he left for a period of six months. He returned in September of 1957 and remained until this action was commenced in May 1958. During most of this time Mr. Paxton lived in a rented apartment in Ponce with his family. His compensation was substantially in excess of $10,000 per year. He was authorized by defendant's president to issue written orders to Lummus to make changes to the units of up to $1,000. Defendant's Vice President admitted that such changes could cause "serious trouble" if "poor judgment" was exercised.

In its contracts with Lummus, defendant was required to provide at plaintiff's refinery "a competent Chief Operator who shall have authority to act as Houdry's representative at the job site". Defendant cannot now be heard to deny that its "Chief Operator", Mr. Paxton did in fact have authority to act as its "representative", as required in these contracts.[2]

During the course of Mr. Paxton's stay in Puerto Rico, his supervisors emphasized to him and to others the large area of Mr. Paxton's authority and discretion, with such statements as:

> "Lloyd, on the job there, you represent Houdry, and it is up to you to work out the procedures and the

---

2. Defendant has also suggested that Mr. Paxton and the other personnel of defendant might really be considered as Lummus employees because the same contracts provided that defendant's operating personnel "shall have the status of members of Lummus' operating group as regards all relations with Lummus and Commonwealth." Since plaintiff was not a party to that contract, it cannot be bound by such provision.

arrangements with the refinery personnel. I cannot accept that responsibility from 1800 miles away. I am satisfied that you have and can take care of that on the job. Otherwise you wouldn't be there \* \* \*." From Mr. Paxton's supervisor in Philadelphia, on December 30, 1956.

" \* \* \* you will have to have a very clear understanding with Commonwealth and Paxton to the effect that Paxton is running the show after you leave \* \* \*." From one of defendant's top technical personnel to Mr. Paxton's supervisor when the latter was in Puerto Rico, on March 28, 1958.

"Frank's presence in Ponce does not in any way alter your prime responsibility for the operation of the No. 2 HCC Unit, just as detailed in the memorandum I left with you. Therefore, Frank will basically report to you \* \* \* things he may see through such reviews will, of course, be discussed with you."

" \* \* \* If the morning meetings are still continuing, Frank can attend these meetings to represent you, but I feel that the responsibility for decisions regarding the operation of the unit should rest in your hands." From Mr. Paxton's immediate superior in Philadelphia, on April 16, 1958.

These clear definitions of Mr. Paxton's authority cover the primary activity of defendant in Puerto Rico, that of supervision of the start-up and operation of the "Houdriflow" and "Houdriformer" units at plaintiff's refinery. This and other evidence in the record clearly establishes Mr. Paxton as defendant's general agent, or at least its managing agent, for the purpose of service of process. Lone Star Package Car Co. v. Baltimore & Ohio R. Co., 5 Cir., 1954, 212 F.2d 147, 152; Schwartz v. District Court, supra. Therefore, I find that the service of the summons and complaint upon Mr. Paxton was valid.

However, if for any reason service upon Mr. Paxton was not valid, the substituted service upon the Secretary of State of Puerto Rico gives this Court jurisdiction over defendant.

██ Plaintiff effected substituted service pursuant to the provisions of Section 1207 of the General Corporation Law (14 L.P.R.A.Supp. § 2207), which provides:

"In case legal process against a corporation cannot by due diligence be served upon any person authorized to receive it, such process, including the complaint, may be served in duplicate upon an official of the Department of State designated by the Secretary of State for that purpose, which service shall be effectual for all purposes of law \* \* \*."

As used in this Section, the word "corporation" includes both foreign and domestic corporations. Klein v. Sunbeam Corp., 1953, 8 Terry 575, 47 Del. 575, 95 A.2d 460, 462; Fletcher, Cyclopedia of the Law of Private Corporations § 8704 (1955 Rev.Ed.). Defendant argues, however, that this section is limited to service upon qualified foreign corporations relying upon the provision in Section to the effect that the Secretary of State shall forward the summons and complaint to the defendant "at its last registered office." Defendant further argues that, since Puerto Rico did not adopt a provision comparable to Section 353 of the Delaware Code, which provides a specific procedure for substituted service upon non-qualified foreign corporations, a "loophole" may exist exempting non-qualified foreign corporations from substituted service in Puerto Rico.

This question has not been before the Supreme Court of Puerto Rico, and in the absence of controlling precedent supporting defendant's contention, this Court cannot accept such contention. Analysis of the various sections of the Corporation Law reveals several departures from the Delaware Act, including the enlargement of Section 1207 (Title 14, L.P.R.A.Supp. § 2207) to cover substituted service on all corporations. The provision in Section 1207 (T. 14 L.P.R.A.Supp. § 2207) providing for the

**492**

mailing of notice to the defendant corporation cannot be used as a shield against substituted service. Such construction would immunize from service of process the foreign corporation which, in violation of Section 1401 of the Corporation Law (T. 14 L.P.R.A.Supp. § 2401) does business in the Commonwealth without qualifying to do such business. I cannot attribute to the learned scholars who participated in the drafting of the Corporation Law the creation of such a "loophole." Similar statutes have not been so construed. Toedman v. Nooter Corp., 1957, 180 Kan. 703, 308 P.2d 138, 143.

The motion of defendant to dismiss the complaint, or, in the alternative, to quash the return of the summons, is denied. Defendant will have 30 days from the date of service of this order to answer or otherwise plead to the complaint.