MUTUAL INTERNATIONAL EXPORT CO., Appellant,

v.

NAPCO INDUSTRIES, INC., Appellee.

No. 16988.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 3, 1963.

Decided March 7, 1963.

---

1. Counsel who argued the case in this court had no responsibility for preparing the complaint.

Mr. Robert F. Rolnick, Washington, D. C., with whom Mr. Marshall E. Miller, Washington, D. C., was on the brief, for appellant.

Mr. Alan L. Wurtzel, Washington, D. C., with whom Mr. Max M. Kampelman, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, FAHY and WRIGHT, Circuit Judges.

## PER CURIAM.

The question presented by this appeal is whether the appellee, Napco Industries, Inc., an Indiana corporation with its principal place of business in Minneapolis, Minnesota, is "doing business" in the District of Columbia within the intendment of 13 D.C.Code § 103. The facts show generally that Napco is engaged in the business of trading with various foreign governments through their representatives in the District of Columbia and maintains a full-time agent there for this purpose. The alleged tortious breach of contract which is the basis of this action also occurred in the District. Thus Mueller Brass Co. v. Alexander Milburn Co., 80 U.S.App.D.C. 274, 152 F.2d 142 (1945), is distinguishable. Also here, unlike Mueller Brass, the "doing business" is with governments other than our own. Under the circumstances, we conclude that Napco was properly served in the District of Columbia.

Reversed.

WRIGHT, Circuit Judge (concurring).

Appellant brought an action against the Alpana Corporation and Napco charging Alpana with breach of contract and Napco with tortiously inducing the breach. The District Court dismissed the action as to Napco after granting its motion to quash the service on its resident agent in the District of Columbia. The motion to quash alleged that Napco had not qualified to do, and was not doing, business in the District.[1] The complaint filed in the District Court does not allege a jurisdictional basis. It does appear, however, that the action was cognizable in the District Court as a federal court[2] and as a local trial court of general jurisdiction.[3] Consequently, if the action and the parties were properly before the court in either capacity, it should not have been dismissed.

Mutual, Napco and Alpana are foreign corporations[4] in the business of trading with various foreign governments through their representatives in Washington. Alpana, as agent for appellant Mutual but in its own name, obtained a contract with the Government of Iraq for the sale of automotive military equipment. Before the contract was performed, appellee Napco's executive vice president came to Washington and entered into a contract with Alpana under which Alpana diverted its contract with

---

1. A similar motion filed by Alpana was denied by the court.

2. The complaint alleges the claim "exceeds the amount of $10,000.00." The record shows that Mutual is an Illinois corporation with its principal place of business in Chicago, that Alpana is a New York corporation with its principal place of business in New York City, and that Napco is an Indiana corporation with its principal place of business in Minneapolis.

3. "As we have often pointed out, the District Court of the United States for the District of Columbia is both a federal district court and the local trial court of general jurisdiction. As the former, it is governed by national legislation respecting venue, jurisdiction, procedure, and the like, embodied in the United States Code. As the latter, it is governed by local legislation, embodied in the District of Columbia Code." Fehlhaber Pile Co. v. Tennessee Valley Authority, 81 U.S.App. D.C. 124, 125, 155 F.2d 864, 865 (1946). See also King v. Wall & Beaver Street Corporation, 79 U.S.App.D.C. 234, 237, 145 F.2d 377, 380 (1944). And see Rule 81(e), F.R.Civ.P.

4. See Note 2.

the Iraqi Government from Mutual to Napco. The record further shows that appellee maintains a resident agent, styled its "District Sales Manager," in the District of Columbia for the purpose of obtaining contracts, on a commission basis, with foreign governments. It is on this resident agent, whose sales for Napco aggregate more that $500,000 annually, that service was made.

The parties both rely on a local statute [5] of the District of Columbia providing for service of process on corporations "doing business" or "transacting business" in Washington. Each cites various cases from this court interpreting this statute in support of its position. As I view the instant case, however, it is not necessary to refer to this local statute, passed in 1901, or to the interpretations of this court with respect thereto. Since this case comes within the diversity jurisdiction of the District Court, since, as shown infra, the venue requirements of 28 U.S.C. § 1391(a) have been satisfied, and since service was made on a "managing agent" of the appellee in the District pursuant to Rule 4(d) (3), F. R.Civ.P., the motion to quash service on the appellee should have been denied and this case should not have been dismissed.

Much confusion exists as to whether, in diversity cases, local or federal law is to be the guide in determining the amenability of a foreign corporation to the service of process of a federal court. Many of the cases have failed to note the difference between Rule 4(d) (3), providing a federal manner of service, and Rule 4(d) (7), providing for service pursuant to state law, as well as the various considerations which arise from that difference. If a state statute is to be relied on under Rule 4(d) (7) in effecting service on a foreign corporation, then, presumably, state law may, within the limits of due process,[6] furnish a guide to interpretation of that statute.[7] On the other hand, if a state statute is not used, then no reason appears why the application of Rule 4(d) (3) should be restricted by state law.[8]

Unlike most state service of process statutes which combine the two, the federal requirements of venue are found in the Judicial Code and the manner of

---

5. 13 D.C.Code § 103, which reads:

"In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business, or, in case he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, if there be no such place of business, by leaving the same at the place of business or residence of such agent in said District, and such service shall be effectual to bring the corporation before the court.

"When a foreign corporation shall transact business in the District without having any place of business or resident agent therein, service upon any officer or agent or employee of such corporation in the District shall be effectual as to suits growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the said District."

Apparently no effort was made to serve Napco under 29 D.C.Code, § 933i. Compare Curtis Brothers, Inc. v. Thomasville Chair Company, 110 U.S.App.D.C. 84, 289 F.2d 461 (1961).

6. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

7. The term "manner" used in Rule 4(d) (7) apparently includes not only the mechanics of service, e. g., publication and mailing, but also local limitations on the type of suit in which it may be used. Thus interpreted, state statutes could limit access to the federal courts where state restrictions on service of process are more restrictive than federal concepts of doing business. See Note, 69 Harv. L.Rev. 508, 520 (1956) ; Note, 47 Cornell L.Q. 286, 288 (1962). For a collection of cases and criticism of this interpretation, see Note, 5 Duke B.J. 129, 131–132 (1956).

8. Constitutionally, federal courts, because of their national character, are not inhibited in exercising their jurisdiction by state territorial limitations. See Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In fact, it has never been doubted that Congress can provide for nationwide service. Chief Justice Stone, for a unanimous Court, so stated unequivocally: " * * * Congress [can] provide for service of process

making service is provided by Rule. Both must be satisfied before a party is properly before the court.[9] In diversity cases, venue is satisfied under the provisions of 28 U.S.C. § 1391(a), while Rule 4 provides for the manner and place of making service. If venue in a diversity case is satisfied through the residence of the plaintiff,[10] then an individual defendant, not a resident of the district or the state but personally served under Rule 4(d) (1) while sojourning therein, may be properly before the court.[11] Likewise, a foreign corporation doing business in the district under 28 U.S.C. § 1391(c), in addition to satisfying the requirement of venue, is sufficiently present under Rule 4(f) to be properly served under Rule 4(d) (3).[12] In interpreting "doing business" under § 1391(c), we do not look to local law. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), and its progeny have taken us well down the road to conformity, substantive and procedural, in diversity cases, even at the expense of the Federal Rules, but no case has yet suggested that

anywhere in the United States." Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 442, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946). See also Note, 69 Harv.L.Rev. 508, 516, n. 69. Indeed, with reference to cases arising under certain special statutes, Congress has so provided. For a collection of these statutes, see id., n. 69. Generally, however, for the convenience of litigants and witnesses, Congress has imposed venue requirements, and Rule 4(f) limits service to the state in which the federal court is sitting. In addition, 28 U.S.C. § 1404(a) provides for transfers "in the interest of justice." Thus federal law has devised its own scheme of venue, convenience, and notice. Resort to local law, therefore, except perhaps for implementation as under Rule 4(d) (7), is unnecessary and inappropriate.

9. Here venue is properly laid under 28 U.S.C. § 1391(a) since both Alpana and Napco, as shown infra, are "doing business" in the District within the intendment of 28 U.S.C. § 1391(c). Compare Olberding v. Illinois Central R. Co., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953).

10. As discussed in Note 9, the residence of the defendants, determined pursuant to 28 U.S.C. § 1391(c), satisfies the venue requirement of 28 U.S.C. § 1391(a). Since appellant is also "doing business" in the District, it may be that venue can also be predicated on its residence here. Section 1391(c), when read with § 1391 (a), reveals an ambiguity which has troubled commentators and produced a division among courts. The question is whether corporate plaintiffs, suing in diversity, may lay venue in any district in which the *plaintiff* corporation is doing business. See Note, 28 Ind.L.J. 256 (1953), which suggests that the revisers did not intend in 1948 to permit corporate plaintiffs to enlarge venue in this way. Some courts, however, have permitted corporate plaintiffs thus to lay venue. See Consolidated Sun Ray, Inc. v. Steel Insurance Company, E.D.Pa., 190 F.Supp. 171 (1961); Travelers Insurance Company v. Williams, W.D.N.C., 164 F.Supp. 566 (1958); Standard Insurance Company v. Isbell, E.D.Tex., 143 F.Supp. 910 (1956); Eastern Motor Express v. Espenshade, E.D.Pa., 138 F.Supp. 426 (1956); Southern Paperboard Corporation v. United States, S.D.N.Y., 127 F. Supp. 649 (1955); Hadden v. Barrow, Wade, Guthrie & Co., N.D.Ohio, 105 F. Supp. 530 (1952); Freiday v. Cowdin, S. D.N.Y., 83 F.Supp. 516 (1949). Contra, Robert E. Lee & Co. v. Veatch, 4 Cir., 301 F.2d 434 (1961); Chicago & North Western Ry. Co. v. Davenport, S.D.Iowa, 94 F.Supp. 83 (1950). The question is apparently not raised in Olberding v. Illinois Central R. Co., supra, Note 9, where the plaintiff Illinois Central was doing business in the district but apparently did not attempt to lay venue on this ground.

11. See Restatement, Judgments, § 15 (1942); Kurland, In Personam Jurisdiction, 25 U.Chi.L.Rev. 569, 574, n. 26 (1958).

12. It would seem also that a foreign corporation defendant served under Rule 4 (d) (3) through "an officer [or] a managing agent" in the state while there on business of the corporation, even though the business being done was not sufficient to satisfy the requirements of 28 U.S.C. § 1391(c), might also be properly before the court. While the Rule 4(f) requirement of service within the state would not be satisfied by serving an officer or agent while in the state not on corporate business, since the corporation could not then be said to be served while in the state, the same need not be true where the officer or managing agent is in the state active for his corporation.

we look to state law for the meaning of a federal statute. We do know that the Seventh Amendment to the Constitution cannot be sacrificed on the altar of conformity. Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963). We think that the due process cases, beginning with International Shoe, supra, Note 6, furnish the touchstone for interpretation of "doing business" under § 1391(c).[13]

Here Napco clearly was "doing business" in the District under 28 U.S.C. § 1391(c). Its resident agent was in the District on a permanent, full-time basis, maintaining an office for appellee and doing appellee's business, which, incidentally, was substantially more than mere solicitation of contracts from government agencies. Compare International Shoe Co. v. Washington, supra, Note 6, 326 U.S. 316–319, 66 S.Ct. 158–159. Moreover, the incident in suit, the tortious breach of contract, occurred here.[14] Under the circumstances, service on the resident agent satisfies the "managing agent" requirement of Rule 4(d)(3) since service on an agent in charge of business of a company sufficient to satisfy the requirements of 28 U.S.C. § 1391(c) is service on a "managing agent" under Rule 4(d)(3).[15]

13. The cases are divided on whether, in diversity, the conformity principle derived from the Erie—York—Woods—Angel line of cases closes the doors of a federal court whenever a defendant is not subject to personal jurisdiction under the laws of the state where the District Court is held. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). One line of cases takes the view that, in diversity, a District Court can exercise personal jurisdiction over a corporate defendant only to the extent this may be done by the courts of general jurisdiction in the state in which the District Court sits. See Riverbank Laboratories v. Hardwood Products Corp., 7 Cir., 220 F.2d 465 (1955), reversed per curiam, 350 U.S. 1003, 76 S.Ct. 648, 100 L.Ed. 866 (1956); Mississippi Wood Preserving Co. v. Rothschild, 5 Cir., 201 F.2d 233 (1953); Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541 (1953); Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193 (1948).

On the other hand, the Court of Appeals for the Sixth Circuit has assumed that Rule 4(d)(3) should be coupled with a uniform federal standard of amenability in diversity cases and looks generally to federal precedents to determine whether a foreign corporation is "found" within the state where service is made pursuant to Rule 4(d)(3). Scholnik v. National Airlines, 6 Cir., 219 F.2d 115 (1955), cert. denied, 349 U.S. 956, 75 S.Ct. 882, 99 L.Ed. 1280 (1955); K. Shapiro, Inc. v. New York Central Railroad Company, E.D., Mich., 152 F.Supp. 722 (1957).

The Court of Appeals for the Second Circuit has gone farther still to hold that "whether a foreign corporation is *present* in a district to permit of service of process upon it is [a question] of federal law governing the procedure of the United States courts and is to be determined accordingly [in diversity as well as federal question cases]." Jaftex Corporation v. Randolph Mills, Inc., 2 Cir., 282 F.2d 508, 516 (1960). Whether a federal test of amenability (other than limitations imposed upon states by the Fourteenth Amendment) should be applied where process of a District Court is based on state law under Rule 4(d)(7) is perhaps questionable since many of the state process statutes incorporate their own tests of amenability, and administration of these under a uniform federal test of amenability would, or might, be destructive of the state scheme. See 1959 Wis.Stat. 262.05 and, generally, the motor vehicle process acts. That question, however, need not be resolved here.

14. Compare Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158 (1933); Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927); Kane v. New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222 (1916).

15. See Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 212 F.2d 147 (1954); Goldberg v. Mutual Readers League, Inc., E.D.Pa., 195 F.Supp. 778 (1961); Raul International Corp. v. Nu-Era Gear Corp., S.D.N.Y., 28 F.R.D. 368 (1961); American Football League v.

The venue requirements of 28 U.S.C. § 1391(a) and (c) having been satisfied and appellee having been properly served under Rule 4(d) (3), Napco's motions to quash and to dismiss should have been denied.

National Football League, D.Md., 27 F.R. D. 264 (1961); Commonwealth Oil Refining Co. v. Houdry Process Corp., D. Puerto Rico, 185 F.Supp. 485 (1960); DeLuxe Game Corp. v. Wonder Products Co., S.D.N.Y., 157 F.Supp. 696 (1957).