Oscar F. COLLINS et al., Appellants,

v.

NEW YORK CENTRAL SYSTEM,
A Body Corporate, Appellee.

No. 17563.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 4, 1963.

Decided Dec. 19, 1963.

Mr. Joseph H. Koonz, Jr., Washington, D. C., with whom Messrs. Martin E. Gerel and Lee C. Ashcraft, Washington, D. C., were on the brief, for appellants.

Mr. Charles R. Richey, Washington, D. C., for appellee.

Before EDGERTON, Senior Circuit Judge, and WILBUR K. MILLER and FAHY, Circuit Judges.

FAHY, Circuit Judge.

Appellants, husband and wife, residents of Virginia, filed suit in our District Court against the appellee New York Central System, a foreign corporation, claiming damages for personal injuries to the husband, and loss to the wife of consortium, services and companionship, alleged to have resulted from an accident to the husband in the State of New York due to appellee's negligence. Service was made on the chief clerk of appellee at its offices in the Shoreham Building in this City. Appellee moved to dismiss the complaint and quash the service on the ground appellee was not authorized to transact business in and was not doing business in the District of Columbia. Appellee filed a supporting affidavit devoted to the nature of its activities in this jurisdiction. Promptly thereafter appellants moved for a continuance of the hearing on the motion to dismiss to allow discovery to be obtained on the basis of interrogatories directed to appellee under Rule 33, Fed. R.Civ.P. The District Court granted appellee's motion to dismiss without benefit of answers to the interrogatories.

Appellants rely upon the first paragraph of 13 D.C.Code § 103 to support the service:

"In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business, or, in case he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, if there be no such place of business, by leaving the same at the place of business or residence of such agent in said District, and such service shall be effectual to

bring the corporation before the court." [1]

Since appellee does have a place of business in this jurisdiction, service upon it does not depend upon the tort having been committed in the District of Columbia if appellee was "doing business" here within the meaning of the first paragraph of Section 103.

The question whether appellee was "doing business" in the District of Columbia within the meaning of this section of course turns upon the facts. Appellee's affidavit contains a conclusionary statement that it did not have authority to transact business here. This, however, does not answer the question whether it was, in fact, doing business here, which is an issue of a combined factual and legal nature to be decided by the court. The affidavit also averred *inter alia* that the sole function of appellee's office here was to solicit traffic "largely from the Federal Government," the traffic to be moved over transportation lines located entirely outside the District of Columbia, that with respect to such traffic all financial matters were conducted outside the District of Columbia, and that appellee did not execute contracts, perform executive duties or approve or adjust or negotiate claims in this District. The interrogatories were designed to draw out more detailed information, including the title and duties of every employee of appellee in its office here, whether any of its employees had authority to accept orders from any source, governmental or otherwise, and the function of the freight department located in the Shoreham Building.

In Mueller Brass Co. v. Alexander Milburn Co., 80 U.S.App.D.C. 274, 152 F.2d 142 (1945), corporate activities consisting almost entirely of maintaining contact with government agencies, coupled with some solicitation of orders, were held not "doing business" within the Code provision; and of similar tenor is Cancelmo v. Seaboard Air Line Ry., 56 App.D.C. 225, 12 F.2d 166 (1926); and see Traher v. De Havilland Aircraft of Canada, Ltd., 111 U.S.App.D.C. 33, 294 F.2d 229 (1961), cert. denied, 368 U.S. 954, 82 S.Ct. 397, 7 L.Ed.2d 387 (1962). However, in Fiat Motor Co. v. Alabama Imported Cars, Inc., 110 U.S.App.D.C. 252, 292 F.2d 745, cert. denied, 368 U.S. 898, 82 S.Ct. 175, 7 L.Ed.2d 94 (1961), and Mutual International Export Co. v. Napco Industries, Inc., 114 U.S.App.D.C. 392, 316 F.2d 393 (1963), service in this jurisdiction was sustained, the court holding the foreign corporate defendants were "doing business" here, though it should be added that in the latter case the alleged tort also occurred here; and in Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134, 134 F.2d 511, 516, 146 A.L.R. 926 (1943), where the subject is treated extensively, the court said, "Solicitation plus maintaining an office is sufficient," a statement difficult to reconcile with the later holding in the *Mueller Brass Co.* case.

The cases referred to, without more, show the difficulty in drawing the line between doing and not doing business and the consequent need of the court to be informed of the facts before deciding the issue. Appellee's affidavit clearly implies that traffic is solicited, whether substantially is not disclosed, from others than the Federal Government. Moreover, nowhere does it unequivocally aver that the activities of its office in the Shoreham Building are its only activities in this jurisdiction.[2]

1. The second paragraph of 13 D.C.Code § 103 reads:
   "When a foreign corporation shall transact business in the District without having any place of business or resident agent therein, service upon any officer or agent or employee of such corporation in the District shall be effectual as to suits growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the said District."

2. In this regard it is to be noted that the 1963–64 District of Columbia Telephone Directory also lists, under the name of the appellee, a vice-president's office in the Pennsylvania Building in this city.

Further information is necessary to determine whether solicitation is substantial and whether other activities, if any, are merely incidental to it or of greater significance. Appellants' interrogatories sought fuller disclosure in this as well as in other respects.

Action on the motion to dismiss should have awaited answers to the interrogatories, except as the interrogatories might be subject to valid objection.[3] Urquhart v. American-La France Foamite Corp., 79 U.S.App.D.C. 219, 144 F.2d 542, cert. denied, 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625 (1944). They were propounded under Rule 33 of the Federal Rules of Civil Procedure. This Rule provides for written interrogatories to be answered by an adverse party. If such party is a corporation the answers shall be by any officer or agent of the corporation. The Rule also provides that the interrogatories may relate to any matter which can be inquired into under Rule 26(b) and that the answers may be used to the same extent Rule 26(d) provides for the use of a deposition. Rule 26(d) (2) provides that the deposition of an officer or agent of a corporation may be used by an adverse party for any purpose. This covers our case. Moreover, Rule 26(a) provides that any party may take testimony by discovery. Referring to Rule 26(a) this court in *Urquhart*, 79 U.S.App.D.C. at 221, 144 F.2d at 544, said, in language equally applicable to this case, that the correct interpretation of the Rule is found in Moore's Federal Practice (1938) 2467, 2468, as follows:

"Where the defendant serves in advance of answer a motion to dismiss under Rule 12(b), such as a

foreign corporation moving to dismiss on the ground of the insufficiency of service of process, it would seem that the court should ordinarily grant leave to the plaintiff to take depositions on the issues of fact, if any, raised by the motion, such as matters relating to the question whether the foreign corporation is doing business in the state * *."

Jiffy Lubricator Co. v. Alemite Co., 28 F.Supp. 385 (D.C.N.D.1939) is cited in support. And see General Indus. Co. v. Birmingham Sound Reproducers Ltd., 26 F.R.D. 559 (E.D.N.Y.1961); 4 Moore, Federal Practice 2302 (2d ed. 1963).

Reversed and remanded for further proceedings consistent with this opinion.

WILBUR K. MILLER, Circuit Judge (dissenting).

As partially pointed out in the majority opinion, this suit was filed July 27, 1962, in the United States District Court for the District of Columbia by a husband and wife, who are residents of Virginia, to recover for injuries sustained by the husband in an accident at Lockport, New York, allegedly caused by the negligence of the railroad company's employees. Process was served July 30, 1962, on the chief clerk of the appellee's office in the District of Columbia.

On August 27, 1962, the New York Central, appearing specially, moved to dismiss or in the alternative to quash the service of process on the ground that on July 30, 1962, it was not doing business in the District of Columbia, and in support filed the affidavit[1] of its vice president averring:

"(1) That on June 8, 1961, the New York Central System was a con-

---

3. Such interrogatories as clearly called for information already supplied, or undisputed, would be subject to such objection.

1. A supplemental affidavit filed September 26, 1962, averred:
"(1) That the District of Columbia office of the defendant, New York Central System, was opened in 1940; and
"(2) That from its inception, the District of Columbia office of the defendant

has never sold and does not now sell passenger tickets; and

"(3) That since its inception, the District of Columbia office has maintained an average staff of approximately six to eight persons with the exception of the World War II period when the staff included some sixteen persons; and that at all times pertinent herein, the staff consisted of four persons."

solidated corporation incorporated in the States of New York, Pennsylvania, Ohio, Indiana, Illinois and Michigan; that it is presently incorporated solely in the State of Delaware; and that its executive offices are, and always have been, located in the State of New York; and

"(2) That the corporation is engaged in the operation of lines of railroad, as a common carrier of passengers and freight, in the States of New York, Massachusetts, Pennsylvania, Ohio, Indiana, Illinois, Michigan, Missouri and West Virginia; and

"(3) That the corporation has no authority to transact business in the District of Columbia and does not have, and never has had, a certificate of authority pursuant to the District of Columbia Code, Title 29, Section 933; and

"(4) That the corporation does not own or operate, and never has owned or operated, any lines, trackage rights or transport facilities of any kind into or within the District of Columbia; and

"(5) That the sole function of the New York Central System office, located in Room 228 of the Shoreham Building, Washington, D. C., is to solicit traffic, largely from the Federal Government, to be moved over lines entirely outside of the District of Columbia; and that all financial matters pursuant to such traffic are conducted outside of the District of Columbia; and

"(6) That the said District of Columbia office of the defendant does not execute contracts, perform executive duties, or approve, adjust, or negotiate claims; and

"(7) That the said District of Columbia office does not determine the routing or scheduling of the defendant's trains as a result of orders solicited; and that all such orders are forwarded to New York where approval and all other executive decisions are made; and

"(8) That all employment agreements with the personnel of the District of Columbia office and their wages are determined by and paid from offices outside of the District of Columbia; and

"(9) That the corporation has no funds, or bank accounts of any kind in the District of Columbia; and

"(10) That it owns no property located in the District of Columbia, other than office furniture of nominal value; and

"(11) That no formal meetings of shareholders or directors are held in the District of Columbia; and

"(12) That the corporation has no registrar, transfer agent, trustee, or other agent for the transfer of its securities within the District of Columbia; and

"(13) That a copy of the Summons and Complaint in the above-entitled cause was personally served on July 30, 1962 at 11:00 a.m. by a Deputy U. S. Marshal on Ernest Hoff, Chief Clerk in the defendant's office located in Room 228 of the Shoreham Building, Washington, D. C."

The appellants did not controvert the foregoing affidavit, but on September 8, 1962, moved to continue the hearing on the railroad company's motion pending its response to interrogatories propounded to it that day.

On September 26, 1962, the appellee moved the court to strike or quash the interrogatories on the following grounds:

"1. The interrogatories as propounded go beyond the issues of the Court's jurisdiction raised by the defendant's Motion to Dismiss or, In the Alternative, to Quash Service of Summons and Complaint.

"2. The plaintiffs have not controverted or denied that service of the Summons and Complaint was not

made upon a person authorized to receive service under Rule 4, of the Federal Rules of Civil Procedure.

"3. The plaintiffs have made no showing that the defendant is doing business in the District of Columbia and that it is amenable to service of process in the District of Columbia.

"4. The plaintiffs have the duty, under the circumstances, to controvert or deny the central elements of the defendant's Motion to Dismiss or, In the Alternative, to Quash Service of Summons and Complaint.

"5. The plaintiffs have made no showing that the answers to their interrogatories are either necessary to or would help their case.

"6. For such and other further reasons as will appear at the hearing on this Motion."

The cause came on for hearing on November 7, 1962, on the appellee's motion to dismiss the complaint or to quash the service of process, on appellants' motion to continue the hearing thereon pending response to the interrogatories, and on the appellee's motion to strike or quash the interrogatories; and, after argument of counsel, the court granted the motion to dismiss the complaint.

On appeal from this action of the District Court, the appellants present two questions, which they describe in this way:

"The question is [1] whether, in a negligence action for personal injury filed against appellee railroad, the trial court erred in refusing to allow appellant to undertake discovery before ruling on a motion to quash service and [2] whether the trial court erred in granting a motion to quash service when the appellee railroad has had an office in the District of Columbia since 1940 with an average staff of six to eight persons and is actively engaged in soliciting business from the Federal Government." [2]

Thus, the appellants contend that the District Court erred in quashing the service of process without awaiting answers to interrogatories and, at the same time, contend that the local activity disclosed by appellee's affidavits—active solicitation of business from the Government by a staff maintained for that purpose—constituted "doing business" within the meaning of § 13–103, D.C.Code (1961). They devote the larger portion of their brief to argument in support of the second proposition.

The majority answer the first of appellants' questions by saying:

"Action on the motion to dismiss should have awaited answers to the interrogatories, except as the interrogatories might be subject to valid objection. Urquhart v. American-La France Foamite Corp., 79 U.S. App.D.C. 219, 144 F.2d 542, cert. denied 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625 (1944). * * *"

On this holding they reverse and remand, without discussing the second question raised by the appellants.

Thus the majority merely say the trial judge erred in acting on the motion to dismiss without requiring and awaiting answers to the interrogatories—a holding with which I cannot agree, and which I shall discuss later. Very properly, they do not hold that the trial judge erred in dismissing the complaint on the showing made by the affidavits that the railroad company was not doing business here within the meaning of the applicable Code provision. Such a holding would have been contrary to established principles, as will appear from what follows.

The averments of the affidavits, reproduced above, show that the New York Central System, a Delaware corporation, does not own or operate any lines, trackage rights or transport facilities of any kind into or within the District of Columbia, and that the sole function of its

---

2. The numbers were supplied for convenience in reference.

Washington office "is to solicit traffic, largely from the Federal Government, to be moved over lines entirely outside of the District of Columbia." The affidavits further state that the District of Columbia office "does not execute contracts, perform executive duties, or approve, adjust or negotiate claims," and that orders solicited and obtained by the Washington office "are forwarded to New York where approval and all other executive decisions are made."

The situation disclosed by the undisputed affidavits is exactly that which we referred to in Cancelmo v. Seaboard Air Line Ry.,[3] where we said:

> " * * * A railroad company which has no tracks within a district is not doing business therein, in the sense that liability for service is incurred because it hires an office and employs an agent for the merely incidental business of solicitation of freight and passenger traffic. Green v. C[hicago] B. & Q. Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916. * * * "

This principle has not changed in the intervening years. We repeated it in Mueller Brass Co. v. Alexander Milburn Co., 80 U.S.App.D.C. 274, 152 F.2d 142 (1945), and in Traher v. De Havilland Aircraft of Canada, Ltd., 111 U.S.App. D.C. 33, 294 F.2d 229 (1961). In the latter case we said De Havilland's employee in the District of Columbia.

> " * * * is without authority to accept orders from any source, governmental or otherwise, or to execute contracts on behalf of appellee. All contracts are entered into at appellee's offices in Canada, and deliveries of aircraft are made in that country. The present suit has no connection with the District of Columbia or appellee's activities here, such as they are. We conclude that under these circumstances the attempted service of process was properly quashed. See Mueller Brass Co. v. Alexander Milburn Co.,

80 U.S.App.D.C. 274, 152 F.2d 142 (1945); cf. Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926 (1943).

"Our recent decision in Fiat Motor Co. v. Alabama Imported Cars,. 110 U.S.App.D.C. 252, 292 F.2d 745 (1961), is not to the contrary. That was a suit instituted under the Automobile Dealers Franchise Act, 15 U.S.C.A. §§ 1221–1225, affecting business relationships and transactions between private parties within. the District of Columbia. In Mueller Brass the governmental contracts of the defendant were held insufficient to provide a basis for service in a suit brought by a plaintiff not involved in those contracts. The same is true in the instant case, which is strikingly similar in its facts."

In Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926 (1943), service on the foreign corporation was sustained because there was more activity here than mere solicitation and the maintenance of an. office, as we carefully pointed out in the Mueller Brass decision. Hence the statement in the Frene case that "Solicitation plus maintaining an office is sufficient," to which the majority refer, is a bit of dictum which has no effect and so was disregarded by the Mueller Brass opinion.

Although they recite the salient averments of the affidavits which, in my view, bring this case within the doctrine of the decisions above summarized,. the majority hold that action on the motion to dismiss should have awaited answers to the interrogatories which they say

> " * * * were designed to draw out more detailed information, including the title and duties of every employee of appellee in its office here, whether any of its employees. had authority to accept orders from, any source, governmental or other-

3. 56 App.D.C. 225, 228, 12 F.2d 166, 169 (1926).

wise, and the function of the freight department located in the Shoreham Building."

It is noted, however, that the appellee's affidavits amply showed the function of the Washington office and the lack of authority in its employees to accept orders from any source, and that detailed information could not have changed the basic and controlling facts. Moreover, I suggest that information concerning "the title and duties of every employee of appellee in its office here" could not have changed the situation presented and would not have been helpful to the court in evaluating it.

Under Rule 43(e) of the Federal Rules of Civil Procedure [4] the trial judge is authorized to hear a motion on affidavits. Those filed by the appellee were not controverted in any manner: the appellants did not present counter-affidavits, nor did they offer to disprove the allegations of appellee's affidavits by depositions or by the interrogatories. As the statements of appellee's affidavits were not disputed, the trial court properly considered them as having been admitted by the appellants. Washington v. McGrath, 80 U.S.App.D.C. 343, 182 F.2d 375 (1950).

The majority cite Urquhart v. American-La France Foamite Corp.[5] as authority for holding that action on the motion to dismiss should have awaited answers to the interrogatories. That case involved the construction of 28 U.S.C. § 109 (1946),[6] which was the only statute governing jurisdiction over a non-resident in a patent infringement suit. Such a suit may be brought "in any district in which the defendant * * * shall have committed acts of infringement and have a regular and established place of business." This is quite different from the concept of "doing business" contained in § 13–103, D.C.Code.

The District Court in the *Urquhart* case found, on affidavits, that no act of infringement occurred in the District of Columbia. The court refused to permit the plaintiffs to take depositions for the purpose of disproving the allegations of defendant's affidavits, on the idea that it lacked power to do so. We held this refusal was error, quoting Professor Moore's statement that in such cases "the court should *ordinarily* grant leave to the plaintiff to take depositions on the issues of fact, if any, raised by the motion [to quash service of process] * * *."[7] (Emphasis added.)

We recognized, however, "that the court has discretion under Rule 43(e) to decide on affidavits alone such a motion to dismiss as the one we are considering here." But we decided that "in view of the terms of the affidavits it is likely that permission would have been granted to take depositions had the court thought it had power to do so." No such consideration exists here. As I have said, in the *Urquhart* case the affidavits were disputed and there was an offer to disprove them by depositions; in this case, they were not disputed and there was no offer to disprove them. The interrogatories amounted to nothing more than a fishing expedition in which the appellants hoped to induce the appellee to contradict its own affidavits.

For these reasons, I dissent from the decision of the majority. I would affirm the action of the District Court.

4. That Rule reads as follows:
"(e) Evidence on Motions. When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."

5. 79 U.S.App.D.C. 219, 144 F.2d 542 (1944).

6. Now substantially embodied in 28 U.S.C. § 1400(b) (1958).

7. 2 Moore's Federal Practice (1938) 2467.