Ernest F. MARBLE and Olive June
Marble, Plaintiffs,

v.

BATTEN & CO., a corporation,

and

Frank Batten

and

Johnston, Lemon & Co., a corporation,
Defendants.

Civ. A. No. 2255-62.

United States District Court
District of Columbia.

Nov. 12, 1964.

Richard A. Micheel and Louis P. Maniatis, Washington, D. C., for plaintiffs.

Edward J. Skeens, Ford & Skeens, Washington, D. C., for defendants Batten & Co. and Frank Batten.

KEECH, District Judge.

In this action, plaintiffs (husband and wife) seek damages resulting from the purchase of stock from defendants Batten & Co., and Frank Batten individually, as a result of certain alleged misrepresentations.* Count 1 seeks damages under Section 77(*l*) of Ttitle 15 of the United States Code (Securities Act of 1933) and Count 2 asks common law damages for fraud. In the complaint and in the pretrial order, plaintiffs alleged misrepresentations consisting of statements that the price at which plaintiffs, on two occasions, purchased common stock in Saber Boats Inc., was the free market price, whereas (plaintiffs alleged) the price quoted was actually the

* Cause was dismissed as to defendant Johnston, Lemon & Co., July 27, 1962.

result of price-rigging activities of the defendants.

On February 25, 1960, Saber Boats, Inc., pursuant to a claimed exemption from the registration requirements of the Securities Act of 1933, commenced a public offering of common stock at two dollars per share. Batten & Co. was the underwriter on a best-efforts basis. Plaintiffs gave their first order for Saber Boats stock on February 22, 1960, on the advice of a friend working for Batten & Co. Plaintiffs paid for said stock (1000 shares at two dollars per share) by check dated February 27, 1960. In April of 1960, defendants confirmed a sale of Saber Boats stock to certain of Frank Batten's relatives and friends without their knowledge, at the offering price of two dollars per share. No money actually changed hands, although in certain instances checks issued by Batten & Co. were endorsed in the name of some of these persons, and deposited to the credit of Batten & Co., without the knowledge of such persons. Shortly after the reported date of completion of the offering, most of these shares were repurchased by Batten & Co. In the period immediately following May 2, 1960, Batten & Co. actively bid for, purchased, offered and sold Saber Boats stock at prices higher than the original two-dollar offering. On June 22, 1960, plaintiffs purchased 1100 shares from Johnston, Lemon & Co. at 4¾, and on July 3, 1960, bought 100 shares at 3¼ from the same source.

Saber Boats had difficulty in ever getting off the ground. In June of 1960, Frank Batten was informed that certain checks were being returned for insufficient funds, and on July 1 he went to the plant and personally made some of these checks good.

In early August, plaintiffs phoned Frank Batten, who gave them a quotation considerably lower than the prices which they had recently paid. Batten indicated that Saber Boats, Inc., was in a basically good condition. Plaintiffs testified that Batten initially said he could get them more at ½, but that later he said the only price available was 1¼. On August 9, 1960, plaintiffs purchased 1500 shares of Saber Boats at the latter price.

▮ The court finds for the defendants on both counts. The purchase of 1000 shares in February of 1960 occurred approximately two months before any of the alleged price-rigging activities. As to these shares plaintiffs paid the announced offering price. There has been no showing of any misrepresentations or fraud as to price at the time of that purchase. The purchase of 1500 shares in August was some three months after the alleged price-rigging activities. During this period, the price of Saber Boats stock rose and fell, which plaintiffs knew because of their continued dealings in this stock. There is no evidence that the price paid was not the free market price at the time of Batten's quotation of 1¼. The quotation itself indicates that the effect of defendants' fraudulent transactions had long since worn off. There being no proof (the court finds) that the price of 1¼ quoted by defendant was not the free market price, such quotation by defendant did not constitute a misstatement; hence there can be no recovery under either Section 77($l$) or the common law of fraud.

▮ At the trial, plaintiffs sought to introduce evidence that there were false and misleading statements in the prospectus for the Saber Boats offering. These matters were not set forth either in plaintiffs' pleadings or in the pretrial order. Defendants objected timely to the receipt of such evidence, which objection was sustained. The Federal Rules of Civil Procedure provide that the pretrial order can be amended at the trial only to prevent "manifest injustice" (F.R. Civ.P. 16). The pretrial conference was held sixteen months after suit was filed. By that time the plaintiffs should have known and stated their charges against

·defendants. The liberalized rules of pleading require the complainant to set forth little more than the general events giving rise to the claimed liability. Thus the pretrial conference serves a purpose more important than the mere efficiency of the judicial process. At the pretrial conference each party should set forth with clarity its contentions, so as to give notice thereof to the adverse party as to the issues to be tried. Meadow Gold Products Co. v. Wright, 108 U.S.App.D.C. 33, 278 F.2d 867 (1960); Wright, Federal Courts 247 (1963); Note, Variance from the Pretrial Order, 60 Yale L.J. 175, 178 (1951). If new issues are discovered subsequent to the pretrial conference, application to amend the pretrial order should be made at the time of such discovery. It is only in the exceptional case that the pretrial order may be amended after the trial has begun. This is not such a case. Defendants objected that they had had no notice of the added issues .and facts sought to be introduced; that they were taken by surprise; and that therefore such additions would be preju-.dicial to defendants. Plaintiffs conceded that they were possessed of such evi-.dence some time prior to trial.

In view of these findings, it is not necessary for the court to consider whether plaintiffs were required to plead and prove diligence in discovering the misstatements of defendants, nor whether plaintiffs were required to make tender of their stock to defendants at some time prior to trial.

Plaintiffs further claim that they never received the stock certificates for the 1500 shares purchased in August of 1960. This allegation is supported only by plaintiffs' testimony, which is contested by the defendants. Plaintiffs could have introduced the stock books of the corporation, for the purpose of showing any absence of entry of the sale of these shares to plaintiffs, but they did not do so. If the books did reflect such an entry, plaintiffs could have requested the corporation to issue duplicate certificates. There is no evidence that such a request was ever made or refused. This court therefore finds no proof to support this claim of the plaintiffs.

This memorandum is in lieu of findings of fact and conclusions of law.

It follows that the court is constrained to find for the defendants.

It is therefore, this 12th day of November, 1964, ORDERED that the complaint be, and the same is hereby, dismissed.