Alonzo W. DERING, Appellant,

v.

Everette H. WILLIAMS, Trustee in Bankruptcy of Eldon P. Dering, Bankrupt, Appellee.

No. 20567.

United States Court of Appeals
Ninth Circuit.

May 11, 1967.

**418**

C. X. Bollenback, Portland, Or., for appellant.

Gilbert Sussman, Sussman, Shank & Wapnick, Portland, Or., for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

CHAMBERS, Circuit Judge:

Appellant objects to a district court determination voiding under § 67(d)(2)(a) of the Bankruptcy Act, 11 U.S.C. 107(d)(2)(a), certain transactions entered into between himself and bankrupt. This section prohibits transfers by debtors within one year prior to filing a bankruptcy petition when the transfer is not made for adequate consideration and the debtor is insolvent.

Appellant, Alonzo W. Dering, and bankrupt, Eldon P. Dering, are brothers. In 1951 they jointly formed a corporation, Dering Industries, Inc. The corporation engaged in the business of manufacturing and distributing aluminum gates, and had a franchise to distribute certain brands of gates in Oregon. The brothers, each with 100 shares, were the only stockholders, except for one odd share issued to a director. At the time of incorporation, or thereabouts, Eldon (the bankrupt) executed an agreement giving appellant (Alonzo) an option to purchase his shares, should he become insolvent or bankrupt.

We jump now to 1961. At this time Dering Industries was a moderately profitable enterprise under the management of appellant. Eldon helped with the business from time to time, but was mainly involved with his own rose growing business. However, Eldon was having financial trouble and needed cash. To get it, Eldon endorsed his 100 shares in Dering to Alonzo in exchange for $10,000.00. Eldon also received an option to buy the shares back within 180 days for $10,000.00 plus 6 per cent interest. On June 6, 1962, Eldon paid Alonzo $3,000.00 for the return of 30 shares and was given another 180 day option on the remaining 70 shares. Again on December 6, 1962, Eldon paid Alonzo $3,000.00. This time Eldon got

the return of 22 shares and an option on 48 more. The difference between the 30 shares received for the first 3,000.00 and the 22 shares received for the second $3,000.00 represented an adjustment for the 6 per cent interest charge. During all these transactions, ownership of the shares on the corporation's books was not changed, each brother still being credited with ownership of 100 shares. Also during this time, as had been the corporate practice, all corporation profits continued to be paid to the two brothers equally in the form of salaries.

On February 20, 1963, Eldon again traded his shares to Alonzo for cash, this time $5,850.00. Bankrupt (Eldon) again received an option to purchase the 100 shares for $10,000.00, plus interest. At this time the 100 shares issued to Eldon were cancelled and a new certificate for 100 shares was issued to appellant.

During 1963, Eldon's financial position continued to disintegrate. By November 1, 1963, he was insolvent. At about this same time, Alonzo decided to sell or liquidate Dering Industries. Supposedly to speed the liquidation, Alonzo and Eldon entered into a new agreement on March 4, 1964. The agreement called for cancellation of Eldon's option to purchase the 100 shares and substitution of the right to purchase 100 shares from appellant prior to liquidation.

A little more than three weeks after this agreement was signed, Alonzo arranged for the sale of the corporation for $50,240.00. Eldon, already insolvent, was of course not able to exercise his contract and buy the 100 shares, so received nothing. In April of 1964, Eldon filed his voluntary petition in bankruptcy.

Against this background the district court found that the various transactions entered into between Alonzo and Eldon from 1961 through 1964 were in reality security devices for loans made by Alonzo to Eldon and that bankrupt retained the equitable ownership of the 100 shares until March 4, 1964. This determination was correctly made as Eldon paid Alonzo interest for the use of the money advanced on the stock, Eldon continued to receive half the profits (by way of salary) until 1964 when he was obviously insolvent, and during much of the period the shares continued to be carried on the books of the corporation in Eldon's name. Thus when, on March 4, 1964, bankrupt Eldon traded his option on the 100 shares for the contract right to purchase 100 shares before liquidation or sale, he in actuality traded his equitable ownership of half the corporation for the cancellation of the $10,000.00 debt. The right to buy the 100 shares was, because of bankrupt's hopeless insolvency, ephemeral. That this transaction lacked adequate consideration can be seen from the fact that within little more than three weeks the corporation was sold for $50,240.00. Had the option not been terminated, bankrupt's creditors would have realized one half of the $50,240.00, less $10,600.00 representing bankrupt's debt plus interest, or $14,-520.00.

As this court agrees that the business arrangements outlined above constitute a violation of § 67(d)(2)(a), the district court judgment awarding the trustee $14,120.00 ($14,520.00 less a $400.00 credit for the value of Alonzo's services in closing up the corporation) is affirmed.

We find no merit in appellant's contention that the district court erred in basing its holding on a theory not set forth in the pleadings or pre-trial order. Facts supporting recovery under § 67 (d)(2)(a) of the Bankruptcy Act were before the court and were argued. Fed. R.Civ.P. 15(b); Glens Falls Indemnity Company v. United States, 9 Cir., 229 F.2d 370.

Likewise there is no merit to appellant's argument that, if the 1961 through 1964 transactions are viewed as security agreements, the original option agreement, made in 1951, was still operative. Appellant tried to exercise this option by letter to bankrupt on June 30, 1964. The 1951 agreement assumed

a continuing business and was obviously designed to protect appellant's interest in such a business. Dering Industries was sold on March 27, 1964. Appellant's attempt then to exercise this option, which attempt occurred after the corporate sale, must fail. This conclusion is buttressed by the fact that appellant's attempt to resurrect the 1951 option came only after his schemes aimed at vesting absolute ownership of the corporation in himself were questioned.

The judgment of the district court is affirmed.