Marsha Lee WALLIN, as Administratrix of the Estate of Carl R. Wallin, Deceased, Plaintiff-Appellant,

v.

Allen Ernest FULLER and Nationwide Mutual Insurance Company, Defendants-Appellees.

No. 72-1132.

United States Court of Appeals, Fifth Circuit.

April 20, 1973.

Jack Crenshaw, Maultsby Waller, Montgomery, Ala., for plaintiff-appellant.

Richard Ball, Montgomery, Ala., for defendants-appellees.

Before RIVES, WISDOM and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

This case presents the question whether a trial court should instruct a jury on a theory of liability not mentioned in the pretrial order but supported by evidence introduced at the trial without objection. The district court declined so to instruct the jury. We reverse and remand for a new trial.

Carl Wallin was killed on August 16, 1970, when his Volkswagen, which he was driving, collided with a Pontiac driven by Allen Fuller on a two-lane highway near Lowndesboro, Alabama. Wallin held a policy of insurance with Nationwide Mutual Insurance Company, which contained a standard uninsured motorist clause. Fuller was an uninsured motorist within the meaning of this clause. Marsha Lee Wallin, widow of Carl Wallin, brought suit in federal district court seeking a declaratory judgment against Nationwide under the policy, alleging that Fuller's negligence had caused the collision.

On September 20, 1971, the district court held a pretrial hearing and entered an order specifying the issues agreed upon by the plaintiff, Mrs. Wallin, and defendant, Nationwide. The plaintiff's theory of recovery, as recited in the pretrial order, was that Fuller negligently drove onto his left side of the highway, thus causing the collision with Wallin's car. The defendant denied that Fuller had been negligent. Further, the defendant contended that Wallin had been contributorily negligent in pulling out onto *his* left-hand side of the highway to pass another car when there was insufficient room to pass.

Most of the plaintiff's case at the trial was devoted to showing that the collision had occurred in Wallin's right-hand lane, and that Fuller therefore had been on the wrong side of the road. Mrs. Wallin, the plaintiff, identified photographs which she had taken showing that the left side had been torn off

Wallin's Volkswagen. The plaintiff also submitted the testimony of two investigating officers, who stated that the point of impact was on Wallin's right side of the road.

The defense offered the deposition of George Mayes, who had been riding in Fuller's car at the time of the accident, and called Fuller himself to the stand. Both Mayes and Fuller testified that Wallin had pulled out to pass, and that the cars had collided while Wallin was still in the left lane and Fuller was in his right lane.

■ The testimony of both Mayes and Fuller revealed a possibility that, even if Wallin had been contributorily negligent, Fuller might have been guilty of subsequent negligence or wanton conduct. Under Alabama law a showing of subsequent negligence or wantonness defeats a defense of contributory negligence.[1] Counsel for the defendant made no objection to the admission of any of this testimony at the trial. Mayes, the passenger, testified at his deposition that Fuller did not slow down when he first became aware that Wallin was trying to pass; that he finally shouted at Fuller to slam on his brakes; and that Fuller then applied his brakes and skidded into Wallin.[2] The defense took the deposition of Mayes on September 8, 1971, before the pretrial hearing. The plaintiff's attorney was present at

---

1. See, e. g., Birmingham Ry., Light & Power Co. v. Jung, Ala.S.Ct.1909, 161 Ala. 461, 49 So. 434.

2. At his deposition, Mayes testified in part on direct examination by defendant's attorney:

"Q No, what did Fuller do when he saw the Volkswagen there?
"A You mean what he did right then?
"Q Yeah, what did Fuller do from the time that you saw that Volkswagen?
"A What he did looked like he wasn't never going to hit on his brakes or nothing.
"Q Who?
"A I told him, I said, "Slam on your brakes. Do something." I say, "Don't you see the man over in our lane?" He hit his brakes and we skidded right on into him.
*      *      *      *      *
On cross-examination by the plaintiff's attorney:

"Q All right. Now, when that Volkswagen pulled out onto the Fuller side of the road Fuller didn't even see it, did he? At least he didn't act like he saw it, did he?
"A He did't act like he saw it. He say "What's the man trying to do?" I say, "You see what he's trying to do, he's trying to go around." I say, Don't you see him?"
"Q And you are the one told him to put on his brakes, aren't you?
"A You say I the one told him to put on his brakes?
"Q Yes.
"A Well, I tell you like this—
"Q (Interrupting) Fuller didn't even put on his brakes until you told him to, did he?
"A Till I told him to?
"Q Yes.
"A Well, he was going to slam on his brakes, that's what he say.
"Q He said he was going to but he still hadn't done it until you told him to, had he?
"A Well, I told him to hit his brakes, yes.
"Q When you told him to hit his brakes that's when he hit his brakes?
"A That's when he hit his brakes.
"Q He didn't hit his brakes until you told him to, did he?
"A But he seen the car.
"Q He seen the car but he didn't hit his brakes until you told him to?
"A That's right.
*      *      *      *      *
On redirect:

"Q Just a couple of questions, Mr. Mayes. On the question about when you first saw the Volkswagen I understood you to say that the first thing that happened was that Mayes said, "Look at that fellow, what's he think he's doing", or something like that, is that right?
"A No, I said this.
"Q You said that?
"A I said that and Fuller said, "What he think he's doing?" Well, he acted like he didn't want to slam on his brakes, you know, could see him all the time.
"Q And you said slam on the brakes?
"A Yeah, I said, "Slam on your brakes. What you going to do, run into him? Thats when he slammed on his brakes.
*      *      *      *      *

this deposition, but made no mention of the issues of subsequent negligence and wanton conduct either at the pretrial hearing or when the deposition was introduced into evidence at the trial.

Fuller, called as a witness by the defense, gave testimony on cross-examination by the plaintiff's attorney that tended to corroborate Mayes's version of the events.[3] On recross, asked by the plaintiff's attorney whether the accident would not have happened if he had slowed down the least little bit, Fuller replied: "I guess not." Counsel for the defendant made no objection to any of this examination by the plaintiff's lawyer.

Neither attorney drew the court's attention to the fact that this testimony might show subsequent negligence or wanton conduct, or to the fact that the pretrial order precluded these issues, until after both sides had rested. The defendant then submitted requested written charges to the court. The plaintiff's attorney objected to one of these charges on the ground that it failed to include the issues of subsequent negligence and wanton conduct, and requested leave to amend the pleadings to include these issues. The trial court denied leave to amend, applying the standard of Rule 16 of the Federal Rules of Civil Procedure that, where the issues have been narrowed by a pretrial order, amendment will be permitted only when necessary to prevent "manifest injustice." The court proceeded to submit the case to the jury without instructions as to the legal effect of subsequent negligence or wanton conduct. The jury found for the defendant. The court then denied the plaintiff's motion for a new trial, and the plaintiff brought this appeal.

■■ The pretrial conference serves the purposes of expediting litigation and eliminating surprise at the trial. Rule 16 of the Federal Rules of Civil Procedure establishes that the pre-trial order ordinarily governs the course of the trial.[4] Under the Rule 16 "manifest in-

---

3. On cross-examination Fuller testified in part as follows:

Q Did you see him when he first started to pull out?
A Yes, sir.
Q All right. Did you slow down when you saw him first start to pull out?
A No, sir.
Q You did not. Is Mayes correct when he said you kept driving until he said what you going to do, drive into him?
A That's right.
Q That's right. You just kept going 60 miles an hour in the rain, didn't you?
A Yes, sir.
Q You didn't slow up a bit?
A No, sir.
Q You didn't give him time to get in behind that other car, did you?
A No, sir.
Q He tried to get in there behind that other car, didn't he?
A Yes, he did.
Q You kept going right straight on into him until Mayes told you what you going to do, run on into him, and that is when you slammed on your brakes, isn't it?
A That's right.
\* \* \* \* \*

4. Rule 16. Pre-Trial Procedure; Formulating Issues

In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider

(1) The simplification of the issues;
(2) The necessity or desirability of amendments to the pleadings;
(3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;
(4) The limitation of the number of expert witnesses;
(5) The advisability of a preliminary reference of issues to a master for findings to be used as evidence when the trial is to be by jury;
(6) Such other matters as may aid in the disposition of the action. The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court

justice" standard, the question whether to permit amendment of the pretrial order in the course of the trial is generally a matter within the discretion of the trial judge, and an appellate court will intervene only if the trial judge has acted arbitrarily. See Ely v. Reading Co., 3 Cir. 1970, 424 F.2d 758; McKey v. Fairbairn, 1965, 120 U.S.App.D.C. 250, 345 F.2d 739; Case v. Abrams, 10 Cir. 1965, 352 F.2d 193.

Unbending adherence to the strictures of Rule 16 would, however, frustrate another broad policy of the Federal Rules favoring liberality of amendment. This policy is principally embodied in Rule 15, which deals with amendments to the pleadings.[5] It is unlikely that the pretrial order under Rule 16 was intended to make the pleadings, and therefore Rule 15, obsolete. See Commentary, The Pre-Trial Order, 4 Fed.Rules Serv. 16.3, at 906 (1941); Note, Federal Pre-Trial Practice: A Study of Modifications and Sanctions, 51 Geo.L.J. 309, 312 (1963). Even though the parties have the advantage of discovery before the pretrial conference, events not anticipated at the pretrial stage may often occur at the trial. See Clark, To an Understanding Use of Pre-Trial, 29 F.R.D. 454, 459 (1961); Clark v. United States, 1952, D.Or., 13 F.R.D. 342, 345–346. And attorneys would be reluctant to enter agreements at the pretrial conference if later amendments were strictly forbidden.

Courts have therefore widely recognized that Rule 16 must be read in light of Rule 15, and that in some circumstances the policy of Rule 15 should moderate the strictures of Rule 16. Bucky v. Sebo, 2 Cir., 1953, 208 F.2d 304, 305; Brooks v. Wootton, 2 Cir. 1966, 355 F.2d 177; Dering v. Williams, 9 Cir. 1967, 378 F.2d 417; Blackwell v. Regal Cab Co., 1963, 114 U.S.App.D.C. 397, 316 F.2d 398; Meadow Gold Products Co. v. Wright, 1960, 108 U.S.App. D.C. 33, 278 F.2d 867; see Rosden v.

---

in its discretion may establish by rule a pre-trial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to non-jury actions or extend it to all actions.

5. Rule 15. Amended and Supplemental Pleadings
    (a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.
    (b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
    \*     \*     \*     \*     \*
In addition to Rule 15, Rule 54(c) states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Rule 1 requires that the rules construed to secure the "just" determination of every action.

Leuthold, 1960, 107 U.S.App.D.C. 89, 274 F.2d 747; 3 J. Moore, Moore's Federal Practice ¶ 15.13[1], at 982 (1972); 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1491, at 455–56 (1971); Christenson, The Pre-Trial Order, 29 F.R.D. 362, 375 (1961).

■■ At a minimum the accommodation of Rule 16 to Rule 15 should mean that the more liberal standard of Rule 15 should apply when one of the parties seeks amendment to conform the pleadings to the issues actually raised by the evidence introduced at the trial. Monod v. Futura, Inc., 10 Cir. 1969, 415 F.2d 1170, 1173–1174; McDowall v. Orr Felt & Blanket Co., 6 Cir. 1944, 146 F.2d 136, 137; Mayfield v. First Nat'l Bank, 6 Cir. 1943, 137 F.2d 1013, 1016–1017. Rule 15(b) provides that when issues outside the pleadings are tried by express or implied consent of the parties, "they *shall* be treated in all respects as if they had been raised in the pleadings" (Emphasis added.) Amendment is thus not merely discretionary but mandatory in such a case. 3 J. Moore, ¶ 15.13[2] at 996.

■ The trial court erred in applying Rule 16 rather than Rule 15(b). Under the standards of Rule 15(b) the defendant impliedly consented to the trial of issues outside the pretrial order, and the pleadings should therefore have been amended. A substantial quantity of evidence tending to establish subsequent negligence or wanton conduct was brought before the jury, through the deposition of Mayes and the testimony of Fuller, without objection by defense counsel. Indeed, both Mayes and Fuller were defense witnesses, and Fuller was himself a defendant. Cf. Vogrin v. Hedstrom, 8 Cir. 1955, 220 F.2d 863, cert. denied, 1955, 350 U.S. 845, 76 S.Ct. 86, 100 L.Ed. 753. Having deposed Mayes well in advance of the trial, defense counsel cannot complain of having been unaware that the evidence might tend to establish subsequent negligence and wantonness. In these circumstances the failure of the defense to seek to limit the evidence during the trial in accordance with the pretrial order establishes consent to the trial of these issues. See Pan-American Casualty Co. v. Reed, 5 Cir. 1957, 240 F.2d 336; 3 J. Moore, ¶ 15.13[2] at 994; 6 C. Wright & A. Miller, § 1493 at 463–65.

■ The possibility of prejudice to the opposing party may of course be reason to find a lack of consent to amendment under Rule 15(b). See 6 C. Wright & A. Miller, § 1493 at 468. Any danger of prejudice to the defendant in this case could have been averted by the trial court. All witnesses to the accident had testified, as had the investigating officers. It would not have been impractical for the court to have reopened the trial, recalled the witnesses, and granted a short continuance if necessary to enable the defendant to prepare and present a defense. See Meadow Gold Products Co. v. Wright, 1960, 108 U.S. App.D.C. 33, 278 F.2d 867; Brooks v. Wootton, 2 Cir. 1966, 355 F.2d 177; Central Distributors, Inc. v. M.E.T. Inc., 5 Cir. 1968, 403 F.2d 943.

The defendant, Nationwide Mutual, argues that the testimony of Mayes and Fuller was relevant to the issues of negligence and contributory negligence, and that therefore the admission of this evidence without objection cannot establish consent to the trial of any other issues. It is true that part of this testimony tended to rebut the plaintiff's theory that the collision occurred on Wallin's right side of the road, and tended to show that Wallin might have been contributorily negligent in pulling out to pass. But the testimony as to Fuller's failure to apply his brakes, and the conversation between Mayes and Fuller, was not relevant to the plaintiff's theory of recovery, which was founded solely on the theory that Fuller was on the wrong side of the road. Nor did it establish or rebut the contention that Wallin was contributorily negligent. This evidence was much more strongly relevant to the theories of subsequent negligence and wanton conduct, and this should have been apparent to defense counsel.

■ Nationwide also points out that the trial court instructed the jury to consider whether Wallin created an immediate hazard, and told the jury that a finding of impact in Wallin's right lane would not itself show negligence. In sum, Nationwide contends that the jury was instructed to consider fully in light of all the evidence whose negligence was the proximate cause of the accident, and that this in effect substituted for an instruction on subsequent negligence and wantonness. We cannot agree that these instructions were an adequate substitute for full instructions on subsequent negligence and wantonness. Even if the jury had found Wallin's negligence to be a proximate cause of the accident, a showing of subsequent negligence on the part of Fuller might still have entitled the plaintiff to recovery. See W. Prosser, Handbook of the Law of Torts § 66, at 427–28 (4th ed. 1971). Nor, in view of the testimony of Mayes and Fuller, can we agree with Nationwide's contention that there was insufficient evidence of subsequent negligence to present a jury question.

■ Certainly the plaintiff's attorney should have raised these issues at the pretrial conference. He attended the deposition of Mayes, and was thus well aware before the pretrial conference that there was some evidence of subsequent negligence and wanton conduct. Where a party is aware of an issue before a pretrial conference, his failure to raise it there may in some circumstances be grounds for denying later amendment. See McKey v. Fairbairn, 1965, 120 U.S.App.D.C. 250, 345 F.2d 739; Marble v. Batten & Co., 1964, D. D.C., 36 F.R.D. 693.

■ But the failure of the plaintiff's counsel in this case to raise these issues before or during the trial is offset by the failure of the defendant's attorney to attempt to exclude any of the evidence. We find no reason to conclude that the plaintiff's attorney was acting in bad faith by trying to smuggle in issues for the purpose of surprising the defense at the trial. See McDowall v. Orr Felt & Blanket Co., 6 Cir. 1944, 146 F.2d 136; Burton v. Weyerhaeuser Timber Co., 1941 D.Or., 4 Fed.Rules Serv. 16.32. Case 2. Moreover, we are reluctant to penalize the plaintiff for the errors of her attorney. See Link v. Wabash R. R. Co., 1962, 370 U.S. 626, 646–648, 82 S.Ct. 1386, 8 L.Ed.2d 734 (Black J., dissenting); Ferrell v. Trailmobile, Inc., 5 Cir. 1955, 223 F.2d 697; Clark, 29 F.R.D. at 456–457; Note, 51 Geo.L.J. at 341–45.

■ We therefore hold that the district court erred in applying the standards of Rule 16 rather than Rule 15(b), and that under Rule 15(b) the plaintiff was entitled to amendment. The judgment of the district court is reversed and the case is remanded for a new trial.