MBI MOTOR COMPANY, INC., et al.,
Plaintiffs-Appellees,

v.

LOTUS/EAST, INC.,
Defendant-Appellant,

and

Dutchess Auto Company, Defendant.

No. 74–1234.

United States Court of Appeals,
Sixth Circuit.

Dec. 10, 1974.

Harold B. Stone, Stone & Bozeman, Knoxville, Tenn., Lea, Goldberg & Goldsmith, Lola S. Lea, New York City, for appellant.

Allen B. Johnson, Wallace F. Burroughs, Knoxville, Tenn., for appellee.

Before PHILLIPS, Chief Judge, MILLER, Circuit Judge, and McALLISTER, Senior Circuit Judge.

PHILLIPS, Chief Judge.

In this diversity case, MBI Motor Company, Inc., filed suit against Lotus/East, Inc., in connection with five automobiles

it purchased at wholesale from that defendant. After a trial to the court sitting without a jury, the District Judge entered judgment in favor of MBI and against Lotus/East based on a theory of liability not mentioned in the complaint or in the pretrial order. Lotus/East appeals from this judgment. For the reasons stated below, we vacate the judgment of the District Court and remand for further proceedings.

Lotus/East is a distributor of Lotus automobiles, and MBI was an authorized Lotus dealer located in Maryville, Tennessee. Between November 1970 and June 1971 Lotus/East sold to MBI five Lotus cars, of which four eventually were resold to retail customers. Each car at the time of sale had, or subsequently developed, substantial mechanical defects that required repeated servicing by MBI. The four customers were dissatisfied with their cars, and each has taken steps to recover the purchase price from MBI.

On July 24, 1972, MBI filed a complaint against Lotus/East in the Chancery Court for Blount County, Tennessee, alleging misrepresentation in that the cars were not new 1971 model Lotus automobiles as stated by Lotus/East, but were in fact used 1969 model cars. MBI also claimed that it had not been reimbursed for repair work that it performed on these cars pursuant to the parts and service warranty running from Lotus/East to retail purchasers.

Lotus/East removed the case to the District Court, and after further pleading, the District Judge entered a pretrial order that described the theories upon which MBI expected to recover as follows:

"Defendants sold to plaintiffs five Lotus automobiles, billing and warranting the same to be new automobiles and of a 1971 year model; which said five automobiles were not a 1971 year model, and were used automobiles; that warranties were performed by plaintiffs on the five Lotus automobiles; however, plaintiffs were not reimbursed by defendants for said warranties.

\*     \*     \*     \*     \*     \*

"Plaintiffs have conducted themselves in a proper manner, have not damaged any reputation of the Lotus automobile by their actions; but that plaintiffs have been damaged by the misrepresentation and failure to comply with their agreements by the defendants for which plaintiffs sued for damages."

The order also characterized defendant's theory of nonliability in the following manner: "Defendant Lotus/East, Inc., has neither misrepresented any products sold to the plaintiffs, nor has it breached any contract entered into with plaintiffs." The order framed the issues for trial as follows:

"(1) Were the five automobiles which plaintiff purchased from Lotus/East, Inc., new 1971 model automobiles or were they demonstrators?

"(2) If defendant breached his contract with the plaintiff, what is the amount of damages?"

After the trial, the court entered a memorandum opinion holding that Lotus/East had not misrepresented the nature and vintage of the five automobiles. The court concluded, however, that the cars were materially defective at the time of delivery to MBI and that, therefore, Lotus/East breached the implied warranty of merchantability created by § 2–314 of the Uniform Commercial Code. T.C.A. § 47–2–314 (1964).[1] Ac-

1. *47–2–314. Implied warranty—Merchantability—Usage of trade.*—(1) Unless excluded or modified (§ 47–2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

cordingly, the court gave judgment for MBI in the amount of $7,165, denied Lotus/East's motion to reopen for additional proof, and deemed the pleadings amended to conform to the evidence.

Lotus/East complains that the warranty of merchantability was not an issue in the case until the court rendered its opinion and that it would have pursued a different trial strategy and presented additional evidence had it realized its exposure to warranty liability. Defendant relies upon Jackson v. Crockarell, 475 F.2d 746, 747 (6th Cir. 1973), in which we said:

"A review of the record of this case indicates that the statements of counsel in setting out his theory of defense and the charge of the Court to the jury on these points goes well beyond the theory of defense as set out in the pleadings and the pre-trial order. The pleadings under which this case was tried did not raise the defense of the right to kill to prevent the escape of a felon. Since the practice deprives the opposing party of an opportunity to present evidence to counter the new theory, it is reversible error for a court to give instructions concerning an issue not raised by the pleadings."

MBI points out, however, that in *Jackson* there was little or no evidence in the record to support the newly raised defense theory. MBI insists that in the case at bar the merchantability issue was tried by the implied consent of the parties. Fed.R.Civ.P. 15(b). Therefore, the argument goes, the court was fully justified in basing its decision on that theory and in amending the pleadings to conform to the evidence.

■ We think it clear that if a theory of recovery is tried fully by the par-·

    (b) in the case of fungible goods, are of fair average quality within the description; and
    (c) are fit for the ordinary purposes for which such goods are used; and
    (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

ties, the court may base its decision on that theory and may deem the pleadings amended accordingly, even though the theory was not set forth in the pleadings or in the pretrial order. *See* Wallin v. Fuller, 476 F.2d 1204 (5th Cir. 1973); Monod v. Futura, Inc., 415 F.2d 1170 (10th Cir. 1969); Dering v. Williams, 378 F.2d 417 (9th Cir. 1967); Fed.R.Civ.P. 15(b). However, the implication of Rule 15(b) and of our decision in Jackson v. Crockarell is that a trial court may not base its decision upon an issue that was tried inadvertently. Implied consent to the trial of an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection. At least it must appear that the parties understood the evidence to be aimed at the unpleaded issue. *See* Bettes v. Stonewall Ins. Co., 480 F.2d 92 (5th Cir. 1973); Standard Title Ins. Co. v. Roberts, 349 F.2d 613, 620 (8th Cir. 1965); Niedland v. United States, 338 F.2d 254, 258 (3d Cir. 1964).

With these principles in mind, we turn to the evidence presented in this case. MBI personnel and three of the retail purchasers testified at some length about the specific mechanical defects in the five automobiles. The following description by the MBI chief mechanic is typical of such testimony:

"THE COURT: What do you claim was wrong with the car?

"THE WITNESS: At this particular date when the car was bought back from Mr. Yount, the electrical system would not keep the automobile's battery charged; the lights would not extend from their retracted position; the engine would not idle; the automobile overheated frequently; the air conditioner did not work or did not perform

    (e) are adequately contained, packaged, and labeled as the agreement may require; and
    (f) conform to the promises or affirmations of fact made on the container or label if any.
    (3) Unless excluded or modified (§ 47-2-316) other implied warranties may arise from course of dealing or usage of trade. [Acts 1963, ch. 81, § 1 (2–314).]

properly; the automobile had extensive vibration at speeds which the customer was dissatisfied with; the electrical windows in the automobile would not operate or perform normally."

No doubt this evidence is directly relevant to the merchantability of the car, but we are not convinced that plaintiff introduced it with a view to establishing a breach of the warranty of merchantability. The same witness later was asked how new cars could be distinguished from used ones. He gave the following reply: "By their mechanical condition at the time, appearance, problem with such time change items they should not wear out as frequent or should not be a problem at that particular time." The witness then estimated that a particular defect in one of the cars indicated that it had been driven about 30,000 miles.

Thus all of the testimony about the mechanical defects is relevant also to the question whether the cars were new or used. Moreover, both the cross-examination of MBI's witnesses and the direct examination of defendant's own witnesses demonstrates that Lotus/East was concentrating on the misrepresentation issue. For example, defendant devoted a substantial amount of time to proving that MBI had purchased some of the cars at a discount from the normal wholesale price. In addition, there were many questions intended to determine whether MBI understood that it was purchasing used demonstrator cars, as some of the invoices indicated. There was also testimony about the distinction between the year of manufacture of a Lotus automobile and its model year designation. All the references in the record to warranties seem to bear on the question whether MBI was reimbursed properly for service work performed on cars still covered by the six-month parts and service warranty running from Lotus/East to retail purchasers.

MBI, however, directs our attention to the following comments made by the court to MBI's attorney after the noon recess:

"You have introduced proof to the effect that some or all of these cars were defective. Now the proof further shows that although your pleadings indicate that they were bought as new cars they were not.

"The Court would have to hold so far from the testimony that has been introduced that these cars have been used in that they were demonstrators and that your clients knew that. I don't think there is a shadow of doubt about that.

"Now the point is, if these cars were defective as you claim that they were, what is the difference between the value of the car in its defective condition at the time that they were purchased by your client and the difference between the price of the car in its defective condition and what would have been the price of the car—the value, rather, not price, if they had not been in a defective condition.

"There is no proof on that as I know of in this record, and the Court could not make intelligent findings of fact under this proof as it presently exists.

"MR. BURROUGHS: Your Honor, I cannot go further into the value in the deposition which we have summarized and which we—

"THE COURT: I am just calling that to your attention before the case ends, the case closes, so that if you have any proof on that you will be given the opportunity to introduce it. If you don't, then the Court will have to decide the case on the record as it stands after both sides close the proof."

MBI argues that these remarks put Lotus/East on notice that the misrepresentation issue no longer was in the case and that any recovery would be predicated on the defective condition of the automobiles. Aside from the question whether the court's statement as a matter of law could operate to amend the pleadings, we do not believe that it induced the parties to try the merchantability issue as a matter of fact. Our conclusion is supported by the fact that

even at the very end of the trial both parties still were questioning the witnesses on the misrepresentation issue. After all of the evidence had been presented, MBI's attorney described a related suit pending in state court, and his remarks indicate that he believed the issue in the case at bar to be misrepresentation:

"MR. BURROUGHS: No, your Honor. That matter was entirely removed here as to whether or not we are entitled to recover for the service charges and whether or not we are to recover by reason of the fact of misrepresentation on these new automobiles. That is the one lawsuit.

"THE COURT: What is pending over there before the Court?

"MR. BURROUGHS: There is a matter on the Marine car pending over there, and also in the Sessions Court over in Blount County there is a case which is lying dormant at the moment for the unpaid balance on the parts bill."

We conclude that the warranty of merchantability issue was not tried with the implied consent of the parties. Thus it was error for the District Court to base its decision on the warranty theory, because Lotus/East thereby was deprived "of an opportunity to present evidence to counter the new theory . . . ." Jackson v. Crockarell, 475 F.2d 746, 747 (6th Cir. 1973). Lotus/East might have presented evidence bearing specifically on such issues as the possibility of disclaimer under § 47–2–316(2) & (3), notice of breach under § 47–2–607(3)(a), and damages under § 47–2–714. Moreover, defendant may be able to show that the origin of the warranty was not purely statutory—it may have been embodied in an agreement between MBI and Lotus/East, or the warranty given to retail customers may have run also to MBI.

On remand the District Court should reopen the case and permit Lotus/East to produce whatever proof it may have bearing on the warranty of merchantability. Furthermore, since a remand is necessary, we think it appropriate to comment upon the District Court's conclusion that any disclaimer of the warranty in this case would be unconscionable under § 47–2–302. The court did not indicate whether the disclaimer complied with the specific requirements of § 47–2–316. If there was compliance, we believe that the District Court should reconsider its holding in the light of the Tennessee Supreme Court's recent decision in Ford Motor Co. v. Moulton, 511 S.W.2d 690, 693–694 (Tenn.1974), which was decided after the trial of this case in the District Court. *See generally* J. White & R. Summers, Uniform Commercial Code 386–92 (1972).

The judgment of the District Court is vacated and the case is remanded for further proceedings not inconsistent with this opinion. No costs are taxed. Each party will bear its own costs on this appeal.