956 F.2d 1164
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John S. RICHIE, Plaintiff-Appellee,
v.
Clawson SHORT, Individually and in his Official Capacity as
Jailer of Knott County, Kentucky, and Roger Stewart,
Individually and in his Official Capacity as Assistant
Jailer of Knott County, Kentucky, Defendants-Appellants.
 No. 91-5397.
 United States Court of Appeals, Sixth Circuit.
 March 4, 1992.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants, Roger Stewart and Clawson Short, appeal the jury verdict in favor of plaintiff, John S. Richie, in this action stemming from an attack upon Richie while incarcerated at the Knott County Jail in Knott County, Kentucky. For the reasons that follow, we vacate the judgment below.
 
 
 2
 * Richie was arrested on misdemeanor charges of disorderly conduct on September 7, 1989 and was taken to the Knott County Jail at approximately 11:00 p.m. that evening. Deputy Jailer Stewart assigned Richie to a cell block with three other inmates. Two of Richie's cellmates were Jesse Gene Thomas and Jack Blondell, who were awaiting trial on felony charges of murder and rape, respectively. Neither Thomas nor Blondell had ever been cited or reprimanded for engaging in assaultive or threatening behavior while at the jail.
 
 
 3
 Richie testified at trial that, soon after he was placed in the cell, Thomas and Blondell engaged in a brief conversation with Stewart outside of Richie's hearing. Richie spent the rest of the evening playing cards, watching television, and engaging in small talk with his cellmates. He then fell asleep on a mattress near the cell's main door.
 
 
 4
 Richie was awakened by Blondell grabbing him around the neck and cupping his hand over Richie's mouth. Blondell and Thomas then dragged Richie into a separate room in the back of the cell and beat him. Despite his assailants' efforts to keep him quiet, Richie managed to cry out for help. Stewart testified that he first heard Richie's pleas at approximately 2:10 a.m. Stewart, who was the sole jailer on duty at the time, immediately went to the cell door and yelled for the inmates to open the door to the inner cell and to stop fighting. Getting no response, he called the state police. Kentucky State Trooper Tony Watts arrived at 2:13 p.m., at which time he entered the cell and removed Richie, who was taken to a local hospital and released the next morning.
 
 
 5
 Stewart later testified that he had responded to Richie's calls for help consistent with his training, wherein he was instructed to never enter a cell in an inmate-assault situation, but rather to call for support in order to maintain jail security and prevent escapes. Clawson Short, Jailer of the Knott County Jail, was apparently responsible for Stewart's training. Short testified that Stewart was the sole jailer on duty during the assault, because given monetary constraints imposed by the state, the jail could afford only one jailer for the nighttime shift.
 
 
 6
 On August 14, 1990, Richie filed suit against Stewart and Short in their individual and official capacities pursuant to 42 U.S.C. § 1983 (1988). The complaint alleged two theories of recovery: first, that defendants had exposed Richie to an unreasonable risk of injury in placing him, a misdemeanant pre-trial detainee, in a cell with two accused felons, and second, that defendants had failed to respond to the assault in a timely manner.
 
 
 7
 Following discovery, defendants moved for summary judgment. The district court entered a Memorandum Opinion and Order granting in part and denying in part defendants' motion. First, the court granted summary judgment for defendants in their official capacities. The court also entered judgment against Richie on his claim of improper cell placement, finding that defendants were entitled to qualified immunity on this claim.[1] The court, however, denied the motion on Richie's claim that Stewart did not timely respond to the assault, and likewise denied Short's motion on this claim on the ground that Short was responsible for Stewart's training regarding responses to inmate assaults.
 
 
 8
 Trial commenced on March 12, 1991. At the conclusion of the evidence, the court instructed the jury not only on Richie's failure-to-respond claim, but also, over defendants' objection, that the jury could return a verdict against Stewart if it found he had been deliberately indifferent to Richie's safety by placing him in a cell with Thomas and Blondell. The court also instructed the jury, again over defendants' objection, that it could return a verdict against Short if it found that Short's policy was the moving force behind Stewart's cell-placement decision.
 
 
 9
 The jury returned a verdict in favor of defendants on Richie's claim of failure to respond, but returned a verdict in favor of Richie on his claim of improper cell placement. Defendants filed this timely appeal.
 
 II
 
 10
 Richie does not challenge the jury's verdict in favor of defendants on his claim of failure to timely respond, nor does he question the district court's entry of summary judgment in favor of defendants in their official capacity. The sole issue before us is whether the district court erred in instructing the jury on Richie's claim of improper cell placement.
 
 
 11
 At a hearing on the proposed jury instructions, defendants' counsel objected to the instructions on improper cell placement on the ground that this claim had been previously resolved in the court's summary judgment order. In overruling the objection, the court stated that it would allow the claim "to conform with the proof of trial" pursuant to Federal Rule of Civil Procedure 15(b).[2] J.A. at 294. Rule 15(b) provides as follows:
 
 
 12
 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the actions will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
 
 
 13
 Fed.R.Civ.P. 15(b).
 
 
 14
 As Rule 15(b) suggests, when issues not raised in the pleadings are raised by the express or implied consent of the parties and are fully litigated, "the court may treat the issues in all respects as if the parties had raised them in the pleadings." Yellow Freight Sys., Inc. v. Martin, Nos. 89-4079/90-3943, slip op. at 10 (6th Cir. Jan. 16, 1992). The decision to permit the filing of an amended pleading to conform to the evidence rests with the sound discretion of the trial court. Strickler v. Pfister Associated Growers, Inc., 319 F.2d 788, 791 (6th Cir.1963). This court has cautioned, however, that
 
 
 15
 a trial court ... may not base its decision upon an issue the parties tried inadvertently. Implied consent is not established merely because one party introduced evidence relevant to an unpleaded issue and the opposing party failed to object to its introduction. It must appear that the parties understood the evidence to be aimed at the unpleaded issue. Also, evidence introduced at a hearing that is relevant to a pleaded issue as well as an unpleaded issue cannot serve to give the opposing party fair notice that the new, unpleaded issue is entering the case.
 
 
 16
 Yellow Freight, slip op. at 10; see also MBI Motor Co. v. Lotus/East, Inc., 506 F.2d 709, 711-13 (6th Cir.1974) (refusing to find implied consent to litigate unpleaded claim based on evidence that was also relevant to unsuccessful pled claim).
 
 
 17
 Richie concedes, as he must, that defendants never expressly consented to relitigation of the improper-cell-placement claim. Richie seeks, however, to find implied consent in the fact that defendants failed to object to his testimony regarding the alleged secret conversation between Stewart and his assailants prior to the assault. Richie contends that the jury could have inferred from this conversation a conspiracy between Thomas, Blondell, and Stewart to harm him. Richie apparently would have us characterize his allegations of a secret conversation as a distinct "issue" supporting his improper-cell-placement claim, and that defendants' failure to object to this evidence at trial constituted implied consent to re-litigate the claim.
 
 
 18
 We find this argument unpersuasive. Even construing Richie's allegation of a secret conversation as an "issue[ ] not raised by the pleadings," Fed.R.Civ.P. 15(b), rather than simply evidence supporting an issue previously raised in the pleadings, we are convinced that Rule 15(b) cannot be read so broadly as to nullify the effect of a prior order resolving a claim on the merits. The district court's summary judgment order was final as to Richie's claim for improper cell placement, and nothing in the language or purpose of Rule 15(b) suggests that it should be read to case doubt upon the finality of that order.[3]
 
 
 19
 Defendants' failure to object to the secret-conversation testimony, as well as to evidence concerning Thomas's and Blondell's history of assaultive behavior at the jail, similarly does not provide the tacit consent Richie seeks. As we stated in Yellow Freight, "[i]mplied consent is not established merely because one party introduced evidence relevant to an unpleaded issue and the opposing party failed to object to its introduction." Yellow Freight, at 10. If failure to object does not constitute implied consent to litigate unpleaded issues, it follows that claims that were pleaded and disposed of prior to trial cannot be resurrected merely by the failure to object to relevant evidence. We also question the value of a rule that would permit a court to find implied consent to litigate an issue on which a party had previously been granted summary judgment, simply because a party did not object at trial to evidence relevant to the disposed-of claim. Under such an interpretation, litigants could no longer rely on pre-trial dispositions and would feel obligated to object to any evidence arguably related to the disposed-of claim, for fear that failure to do so might subsequently be construed as tacit consent to litigate the disposed-of issues.
 
 
 20
 We find our conclusion all the more compelling because the district court's entry of summary judgment in favor of defendants on the basis of qualified immunity was entirely correct as a legal matter. In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court held that government officials asserting qualified immunity from suit are shielded from liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Id. at 818. In Anderson v. Creighton, 483 U.S. 635 (1987), the Court explained that a plaintiff facing a defendant asserting qualified immunity can prevail only where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. Although this does not mean that the very action in question must have been previously held unlawful, its illegality must be apparent. Id. at 640; Danese v. Asman, 875 F.2d 1239, 1242 (6th Cir.1989), cert. denied, 494 U.S. 1027 (1990). In defining the contours of the concept of "clearly established right" in the context of a qualified immunity claim, this court has held that
 
 
 21
 in the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable [official] that his conduct, if challenged on constitutional grounds, would be found wanting.
 
 
 22
 Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir.1988).
 
 
 23
 Richie predicates his claim for improper cell placement on his status as a pre-trial detainee while at the jail. Richie fails, however, to cite any precedent from which we could infer a right of a misdemeanant pre-trial detainee to be separated from pre-trial detainees charged with felonies. Because Richie has failed to show that defendants violated any clearly established right, defendants were entitled to qualified immunity from suit.
 
 III
 
 24
 In light of the foregoing, we VACATE the jury verdict in favor of Richie and REMAND for the district court to enter judgment in favor of defendants.
 
 
 
 [1]
 Richie does not challenge the district court's grant of summary judgment in favor of defendants on either of these claims
 
 
 [2]
 While the court in fact cited Rule 15(c), the parties agree that the intended reference was to subsection (b)
 
 
 [3]
 Richie seeks additional support in the district court's summary judgment memorandum, wherein the court noted Richie's secret conversation allegations and commented that "[t]he statements contained in this affidavit are inconsistent with the pleadings, presenting an entirely new claim, and with Richie's deposition testimony." J.A. at 111 n. 1. While the court's statement is perhaps not a model of clarity, we disagree that the court intended thereby to undermine the finality of its summary judgment order